UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES YELVERTON,<br><br>      Plaintiff,<br><br> v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>      Defendant. | CASE NO. C23-5261-KKE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff James Yelverton sued Defendant Nationstar Mortgage LLC ("Nationstar") for allegedly providing his personal information to his mother, Beverly Yelverton,[1] without authorization. Nationstar now moves for summary judgment on Yelverton's negligence and Consumer Protection Act claims, arguing every element of each claim fails. The Court finds it unnecessary to address every element because Yelverton provides no evidence that he was injured by Nationstar's allegedly improper disclosures. Because Yelverton fails to raise an issue of material fact with respect to his claimed injury or its alleged cause, Nationstar is entitled to summary judgment and dismissal of this case.

---

[1] For clarity, and not for lack of respect, the Court will refer to Mrs. Yelverton as Beverly and Mr. Yelverton as Michael.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

In June 2007, Yelverton executed two powers of attorney authorizing his mother, Beverly Yelverton, to act as his attorney-in-fact. Dkt. No. 54 ¶ 9, Dkt. Nos. 50-1, 50-2. These documents became null and void by their own terms on January 14, 2008 (Dkt. No. 50-2) and on June 1, 2009 (Dkt. No. 50-1). On July 20, 2007, Beverly, acting as Yelverton's attorney-in-fact, took out a mortgage with Homecoming Financial for $150,000.00 to purchase property for Yelverton at 13471 Glenwood Road Southwest in Port Orchard, Washington ("Glenwood Property"). Dkt. Nos. 50-8, 50-9. On August 6, 2008, Yelverton quitclaimed the Glenwood Property to Beverly and Michael Yelverton, Yelverton's father. Dkt. No. 50-14. Yelverton remained on the mortgage. *See* Dkt. No. 50-13.

On December 1, 2008, Nationstar acquired the servicing rights on the loan from Homecoming Financial. Dkt. No. 50 ¶ 11. Nationstar's records reflect that Yelverton called Nationstar on December 5, 2008, and informed Nationstar that Beverly and Michael should be on the loan based on the quitclaim deed. Dkt. No. 50-13 at 2. On December 29, 2008, Nationstar entered a note in its communication history log stating "BEVERLY YELVERTON (MOTHER) IS AUTHORIZED ON ACCNT." *Id*. It is undisputed that between 2009 and 2017, Beverly had online access to the loan account. Dkt. No. 50 ¶¶ 15–17, *see generally* Dkt. No. 50-13.

On October 23, 2017, Beverly and Michael quitclaimed the Glenwood Property back to Yelverton. Dkt. No. 54-4. In December 2017, Yelverton refinanced the original loan by taking out a new mortgage with Nationstar. Dkt. No. 50-18. Through the refinancing, the 2007 mortgage on the Glenwood Property was released and that account with Nationstar was closed. Dkt. No. 50-19, Dkt. No. 50 ¶ 25.

On December 1, 2021, Beverly sued Yelverton in Kitsap County Superior Court for equitable lien on the Glenwood Property alleging that Beverly and Michael's 2017 quitclaim of

the property to Yelverton was "with the agreement that when the Property sold, Beverly and Michael Yelverton would receive their contributions to the Property back." Dkt. No. 51-13 at 5. Beverly also filed a lis pendens on the Glenwood Property. Dkt. No. 54 ¶ 31.

On July 18, 2022, while the equitable lien case was pending, Beverly called Nationstar requesting copies of documents from 2013 regarding a fire at the Glenwood Property. Dkt. No. 51-12 (transcript of call). In response to Beverly's request, Nationstar emailed three documents to Beverly: a December 19, 2017 letter to Yelverton stating that Private Mortgage Insurance was no longer necessary (Dkt. No. 50-20); a blank transaction report from October 1, 2013, to December 2, 2017 (Dkt. No. 50-21); and a July 20, 2007 U.S. Department of Housing and Urban Development Settlement ("HUD-1") Statement from the original purchase of the property signed by Beverly Yelverton acting as attorney-in-fact for Yelverton (Dkt. No. 50-22).

On October 7, 2022, Kitsap County Superior Court Judge Melissa A. Hemstreet granted Yelverton's motion for summary judgment and dismissed Beverly's equitable lien claim. Dkt. No. 54-6.

On March 30, 2023, Yelverton sued Nationstar[2] for failing to properly safeguard his personal and sensitive data from Beverly and failing to correct inaccurate information about his loan. *See generally* Dkt. No. 1. Yelverton brought four causes of action: negligence, breach of fiduciary duty, violation of the Fair Credit Reporting Act ("FCRA"), and violation of the Washington Consumer Protection Act ("CPA"). *Id.* On August 28, 2024, Nationstar moved for summary judgment on all four claims. Dkt. No. 37. In response, Yelverton withdrew his claims for breach of fiduciary duty and violations of the FCRA. Dkt. No. 41 at 14–15. Nationstar replied.

---

[2] Nationstar's Board of Directors was dismissed as a party by the Court. Dkt. No. 9.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

Dkt. No. 44. The Court heard oral argument (Dkt. No. 49), and the matter is now ripe for resolution.

## II.   ANALYSIS

**A.    The Court Has Subject Matter Jurisdiction.**

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Yelverton's claim under the FCRA raised a federal question.[3] *Wynn v. United Parcel Serv., Inc.*, No. 23-15448, 2024 WL 1191143, at *1 (9th Cir. Mar. 20, 2024). Even though Yelverton withdrew this claim in response to Nationstar's motion for summary judgment (Dkt. No. 41 at 15), under 28 U.S.C. § 1367(c)(3) the Court has discretion to exercise supplemental jurisdiction. *See Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion."). While not mandatory, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This case has been pending for over a year, trial is imminent, neither party seeks remand or dismissal for lack of subject matter jurisdiction, and the record before the Court is complete. Thus, each factor favors the Court continuing to exercise its supplemental jurisdiction to resolve the case. *See, e.g.*, *Garrison v. Allstate Ins. Co.*, No. C21-00624-DGE, 2022 WL 2905881, at *6 (W.D. Wash. July 22, 2022) ("It

---

[3] The Court likely also has diversity jurisdiction under 28 U.S.C. § 1332 but Nationstar failed to file a corporate disclosure statement (Fed. R. Civ. P. 7.1) or otherwise identify the citizenship of its owners/partners/members. Local Rules W.D. Wash. LCR 7.1.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

would be unfair to the parties, the potential witnesses, and the state judiciary to restart the litigation in state court in light of the procedural history of this case.").

**B.    Legal Standard on Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986).  In resolving a motion for summary judgment, the Court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  When the non-moving party opposing summary judgment would have the burden of proof at trial, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

**C.    Yelverton's Claims from 2009 through 2014 Are Time-Barred.**

Yelverton alleges Nationstar allowed Beverly to access his private information dozens of times between 2009 and 2014.  Dkt. No. 41 at 2–6.  Nationstar argues Yelverton cannot bring negligence or CPA claims arising from these acts because they are barred by the applicable statutes

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

of limitations. Dkt. No. 37 at 29–30. Yelverton agrees that the statute of limitations for negligence is three years and the statute of limitations for the CPA is four years. Dkt. No. 41 at 17–18. However, Yelverton argues the statute of limitations on each claim should be tolled under the "discovery rule" because "Yelverton did not discover the factual bases for his claims against Nationstar until July 26, 2022." *Id.* at 18.

When "a plaintiff invokes the discovery rule to counter the statute of limitations defense, the burden is also on that plaintiff to show that facts constituting the cause of action were not discovered or could not have been discovered by due diligence within the limitations period." *Precision Airmotive Corp. v. Rivera*, 288 F. Supp. 2d 1151, 1153 (W.D. Wash. 2003) (citing *G.W. Constr. Corp. v. Prof'l Serv., Indus., Inc.*, 853 P.2d 484, 488 (Wash. Ct. App. 1993)). To meet this burden, Yelverton cites to his own declaration which states, "On July 26, 2022, as part of the Kitsap County lawsuit, Beverly was compelled to produce documents. These documents revealed to me <u>for the first time</u> that starting in or around 2009 Nationstar began to allow Beverly Yelverton to take actions on my behalf without my authorization." Dkt. No. 54 ¶ 34 (citing Dkt. No. 54-9) (emphasis in original). But nothing in the cited exhibit references Nationstar or otherwise indicates that the documents produced at that time included new information about communications between Nationstar and Beverly. *See generally* Dkt. No. 54-9.

Moreover, Yelverton's own declaration reveals he knew that Beverly was in contact with Nationstar between 2008 and 2017 regarding the account, and that she was authorized to take action with respect to the account. Dkt. No. 54 ¶¶ 14, 19 (explaining that from 2008 to 2017, Yelverton made requests to Beverly "for her to either pay off the mortgage(s) on the Property or remove my name from the mortgage on the Property"). And Nationstar points to undisputed evidence that Yelverton knew Beverly had online access to the Nationstar account on February 8, 2018. Dkt. No. 51-10 at 58 (text from Yelverton to Beverly: "Will you forward the email from

Nationstar? I am trying to set up for online pay but it won't let me change email or anything because you are registered. Or tell me password?"). In short, Yelverton does not carry his burden to show that he did not know, or could not have known, the facts giving rise to his claims until July 2022. Even generously assuming Yelverton did not know about Beverly's access until February 2018, Yelverton had to bring his negligence claim for the alleged wrongful acts from 2009–2014 by (at the latest) February 8, 2021, and his CPA claim by February 8, 2022. *See* WASH. REV. CODE § 4.16.080 (three-year negligence statute of limitations), WASH. REV. CODE § 19.86.120 (four-year CPA statute of limitations). This action was not filed until 2023. Dkt. No. 1.

Yelverton's claims arising from Nationstar's actions in 2009 through 2014 are thus time-barred, and the Court will consider only Nationstar's alleged disclosures in 2022 and 2023 in evaluating Yelverton's negligence and CPA claims.

**D.    Yelverton Does Not Provide Evidence That Nationstar's Alleged Wrongful Acts Caused Any Injury.**

The parties agree the elements of a negligence claim are: (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach is a proximate cause of the injury. *Hurley v. Port Blakely Tree Farms L.P.*, 332 P. 3d 469, 479 (Wash. Ct. App. 2014); *see* Dkt. No. 37 at 15–16, Dkt. No. 41 at 8. The parties also agree the elements for a CPA claim are: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986); *see* Dkt. No. 37 at 21, Dkt. No. 41 at 15.

In order to survive summary judgment, for each cause of action, Yelverton must raise a triable issue that Nationstar acted within the applicable statute of limitations in a manner that

caused Yelverton's claimed injury.[4]  *See Halladay ex rel. A.H. v. Wenatchee Sch. Dist.*, 598 F. Supp. 2d 1169, 1175 (E.D. Wash. 2009) (dismissing negligence claim on summary judgment for lack of injury); *Grego v. Kadlec Reg'l Med. Ctr.*, No. 4:16-CV-5150-RMP, 2017 WL 7052263, at *4 (E.D. Wash. Dec. 29, 2017), *aff'd*, 764 F. App'x 570 (9th Cir. 2019) (dismissing CPA and negligence claims on summary judgment when plaintiff failed to show injury from defendant's alleged wrongful conduct).  The only injury Yelverton asserts is that "Beverly Yelverton used non-public personal information that she obtained from Nationstar about Yelverton as the evidentiary foundation for two lawsuits she filed against him, in an attempt to extort money from him."  Dkt. No. 41 at 13.[5]  The undisputed evidence undermines this argument in at least two ways.

First, and fundamentally, there is no evidence Nationstar actually provided any private information to Beverly.  The non-time barred actions Yelverton alleges in his brief are:

> On July 18, 2022, Nationstar provided account access and information and Yelverton's non-public and sensitive information to Beverly without a valid authorization and without notifying Yelverton and/or took other unlawful actions.
>
> On July 20, 2022, Nationstar mailed copy of claim file and provided Yelverton's account information and Yelverton's non-public and sensitive information to Beverly without a valid authorization.
>
> On September 14, 2022, Nationstar provided account access and information and Yelverton's non-public and sensitive information to Beverly without a valid authorization and without notifying Yelverton and/or took other unlawful actions.
>
> On or before November 23, 2023, Nationstar either inexplicably changed Yelverton's address back to Beverly's address, or Nationstar has allowed and is continuing to allow Beverly Yelverton to access Plaintiff's account.

---

[4] While there are other likely fatal deficiencies in Yelverton's negligence and CPA claims, because Yelverton has failed to establish an injury caused by Nationstar's conduct, the Court need not reach them.

[5] To the extent Yelverton argues Nationstar's communications with third-party consumer reporting agencies caused him harm, there is also no evidence of any inaccurate information being provided by Nationstar to a third-party agency or that any such disclosure injured Yelverton.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Dkt. No. 41 at 6–7 (citing Nationstar's communication history log). But the record does not evidence any such disclosures occurred.

The only evidence that any information, whether confidential or not, was provided by Nationstar to Beverly is the three emails sent to Beverly on July 18, 2022. Dkt. Nos. 50-20–50-22. Upon close review, there is no private information in those documents: no dates of birth, social security numbers, or financial information. *Id.* Rather, one of the documents is a form letter concerning mortgage insurance, one is a blank transaction history form, and one is the HUD-1 statement that Beverly signed on Yelverton's behalf in 2007. *Id.*

For the dates of Nationstar's other alleged wrongful disclosures, the only evidence in the record of these acts is Nationstar's communications history log which, again, shows no provision of information to Beverly at all. Dkt. No. 50-13. The log indicates that on July 20, 2022, Nationstar "[m]ailed copy of claim file to customer via regular mail to customer mailing address." *Id.* at 121. Even assuming the "customer mailing address" at that time was Beverly's address, Yelverton does not explain what private information was in this claim file or whether it was different than the three documents emailed on July 18, 2022. Next, on September 14, 2022, it appears Yelverton called Nationstar and updated the address on file. There is no indication this communication was between Beverly and Nationstar. *Id.* at 124–25. Lastly, there is no evidence in the communication history log that any communications took place on November 23, 2023, or that the address on file with Nationstar was changed after September 14, 2022. *Id.* at 127.

Similarly, in his deposition, Yelverton was unable to identify any private information that Nationstar had disclosed to Beverly:

> Q: Okay. So do you have any specific examples of nonpublic sensitive personal information that Beverly's in possession of that you know for a fact she could have only gotten from Nationstar?
>
> A: I don't.

Dkt. No. 51-1 at 22–23. In sum, Yelverton does not show that Nationstar supplied any private information to Beverly, thus undermining his claimed injury.

Second, even if private information had been disclosed, Yelverton has not established how any private information that Nationstar could have provided to Beverly caused his claimed injury, namely that Beverly used information obtained from Nationstar to file an equitable lien lawsuit against him and a lis pendens on the Glenwood Property. Dkt. No. 41 at 13. Like injury, causation is an essential element of both the negligence and CPA claims. *Hurley*, 332 P.3d at 479; *Hangman Ridge*, 719 P.2d at 533. Dispositively, the lawsuit and lis pendens brought by Beverly were filed December 1, 2021. Dkt. No. 54 ¶¶ 30–31, Dkt. No. 51-13. While there is no evidence that the alleged 2022 and 2023 disclosures occurred at all, even if they did, they took place *after* Beverly's filings. Thus, even if Nationstar did provide private information to Beverly, an allegation the record does not support, it could not have led her to file the equitable lien lawsuit or lis pendens against Yelverton.

The evidence shows that Nationstar has not injured Yelverton. The negligence and CPA claims fail.

### E.  Yelverton's 56(d) Motion Is Denied.

Under Federal Rule of Civil Procedure 56(d), a court may defer, delay, or deny a motion for summary judgment when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). In support of his 56(d) request, Yelverton argues: "Yelverton has filed declarations that set forth the ongoing discovery efforts and the specific facts that he hopes

to elicit with further discovery from Nationstar. The evidence obtained from these discovery efforts will assist Plaintiff in defeating Nationstar's summary judgment." Dkt. No. 41 at 18. But neither declaration filed by Yelverton specifies any facts or discovery that could cure the myriad defects in his negligence and CPA claims. *See generally* Dkt. Nos. 53, 54. Accordingly, Yelverton's 56(d) motion is denied. *See, e.g.*, *Ohio Sec. Ins. Co. v. Garage Plus Storage Aviation LLC*, 600 F. Supp. 3d 1164, 1172–73 (W.D. Wash. 2022) (denying 56(d) motion when "declaration does not specify either the facts it hopes to elicit from further discovery or how those facts are essential to oppose [the] motion for summary judgment.").

### III.  CONCLUSION

For these reasons, the Court GRANTS Nationstar's motion for summary judgment. Dkt. No. 37.

The case is dismissed with prejudice. The Clerk is instructed to close the case.

Dated this 22nd day of November, 2024.

_____
Kymberly K. Evanson
United States District Judge